MAY 18 2026 am9:18
FILED - USDC - FLMD - FTM

## UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA FORT MYERS DIVISION

DARREN BUNEO, Plaintiff,

v. Case No.: 2:26-cv-1661-SPC-NPM

UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, PUBLIC SAFETY OFFICERS' BENEFITS PROGRAM, Defendants.

_____/

## COMPLAINT FOR UNREASONABLE DELAY (Administrative Procedure Act, 5 U.S.C. § 706(1))

### I. NATURE OF THE ACTION

1. This is an action under the Administrative Procedure Act, 5 U.S.C. § 706(1), to compel agency action unlawfully withheld or unreasonably delayed.

2. Plaintiff seeks an order requiring Defendants to issue a final determination on his claim for benefits under the Public Safety Officers' Benefits Program.

3. Plaintiff's claim has remained pending for several months despite repeated representations that it was in expedited legal review and at or near the final stage prior to adjudication.

4. Plaintiff does not seek a determination of entitlement or an award of benefits, but only a final decision.

### II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706.

6. The Administrative Procedure Act waives sovereign immunity for this action and provides the appropriate mechanism to compel Defendants to act where agency action has been unlawfully withheld or unreasonably delayed.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the claim occurred here.

## III. PARTIES

8. Plaintiff is a retired New York City Police Department detective and an individual residing in this District who submitted a claim for benefits under the Public Safety Officers' Benefits Program.

9. Plaintiff sustained a September 11-related accident disability and has been diagnosed with post-traumatic stress disorder in connection with his service during the events of September 11, 2001.

10. Plaintiff is a participant in the World Trade Center Health Registry and has a certified condition of post-traumatic stress disorder related to his exposure to the events of September 11, 2001.

11. Plaintiff also receives Social Security disability benefits based on post-traumatic stress disorder arising from those events.

12. Defendants are the United States Department of Justice, the Office of Justice Programs, and the Public Safety Officers' Benefits Program. Defendants are federal agencies, components, or officials responsible for administering and adjudicating claims under the Public Safety Officers' Benefits Program, which is administered pursuant to 34 U.S.C. § 10281 et seq.

## IV. FACTUAL BACKGROUND

### A. Submission of Claim and Initial Requests for Expedited Processing

13. On or about May 30, 2025, Plaintiff submitted his application for benefits under the Public Safety Officers' Benefits Program, thereby initiating the administrative review process.

14. Plaintiff acted diligently and in good faith throughout the process, providing all requested documentation and responding promptly to communications from Defendants.

15. During the early stages of the claim process, Plaintiff submitted written requests through the PSOB portal seeking expedited processing and confirmation that his claim qualified for expedited legal review.

16. These requests were submitted through the document-upload function of the PSOB portal.

17. Upon information and belief, these submissions were rejected or not accepted within the PSOB system.

18. Plaintiff did not receive a substantive response to these requests for expedited processing during the early stages of his claim.

19. As a result, Plaintiff was left without clarity as to whether his request for expedited handling had been considered.

**B. Early Communications Regarding Claim Status**

20. On or about early June 2025, Plaintiff contacted the PSOB program to inquire about the status of his claim and whether it was being processed on an expedited basis.

21. During that communication, a Senior Medical Review Specialist stated, in sum and substance, that Plaintiff's claim was being handled like any other claim and was not being treated differently.

22. Based on this representation, Plaintiff understood that his claim was proceeding through the normal course of review.

23. Throughout June 2025, Plaintiff continued to monitor the status of his claim and made periodic inquiries to confirm that all required documentation had been received.

24. Plaintiff did not receive clear or consistent responses regarding the status of his claim or whether additional documentation was required.

25. Plaintiff reasonably relied upon the absence of any request for additional documentation as an indication that his claim was complete and under review.

## C. July 15, 2025 Communication with PSOB Director

26. On or about July 15, 2025, Plaintiff was contacted by the Director of the Public Safety Officers' Benefits Program regarding the status of his claim and his prior requests for expedited processing.

27. During that communication, the Director stated, in sum and substance, that although she was an attorney, she had confirmed with the Department of Justice Office of General Counsel that Plaintiff qualified for expedited medical claim review.

28. The Director provided Plaintiff with her direct telephone number and electronic mail address and advised him that he could contact her regarding his claim.

29. The Director further stated, in sum and substance, that she would be sending Plaintiff a written letter confirming that he qualified for expedited review under 42 U.S.C. § 3796. 30. Plaintiff reasonably relied upon these representations and understood that his claim had been formally recognized as qualifying for expedited handling.

31. Plaintiff's spouse was present for and personally overheard the July 15, 2025 conversation and is prepared to submit a sworn affidavit attesting to the substance of the statements made during that communication.

32. Despite these representations, Plaintiff did not receive the promised written confirmation letter.

33. Plaintiff did not receive any follow-up communication from the Director memorializing the representations made during that conversation.

## D. July 24-25, 2025 Communications and Account Access Issues

34. On or about July 24, 2025, Plaintiff submitted a message through the PSOB portal stating, in sum and substance, that based upon his understanding of the process, Defendants were required to render a decision within approximately thirty days of receiving complete documentation.

35. Plaintiff stated that, based upon confirmations that Part A and Part B documentation had been submitted and accepted on or about June 20, 2025, he believed that the period for adjudication

had elapsed on or about July 20, 2025.

36. Plaintiff communicated that his claim appeared to be past due and requested clarification regarding the status of his claim.

37. On or about July 25, 2025, Plaintiff received a voicemail communication from a PSOB customer service representative.

38. During that voicemail, the representative stated, in sum and substance, that Plaintiff had been locked out of his account and that she had unlocked it.

39. The representative repeated, in substance, that Plaintiff had been locked out and that she had restored his access.

40. This communication was the first indication provided to Plaintiff that his inability to receive responses or access meaningful communication through the portal may have been caused by an account-level restriction.

41. This raised concerns for Plaintiff as to whether the communication breakdown was systemic or specific to his account.

**E. July 28, 2025 Communication with Senior Medical Review Specialist**

42. On or about July 28, 2025, Plaintiff communicated with a Senior Medical Review Specialist regarding the status of his claim.

43. During that communication, the Senior Medical Review Specialist stated, in sum and substance, that Plaintiff's claim had advanced to legal review and was being handled on an expedited basis.

44. Following that communication, Plaintiff received a voicemail message from the Senior Medical Review Specialist stating, in sum and substance, that the written confirmation letter previously discussed was no longer necessary because Plaintiff's claim was already in expedited legal review.

45. Plaintiff reasonably relied upon these representations as confirmation that his claim had progressed to the final stage prior to adjudication.

46. During the same communication, Plaintiff raised concerns regarding his inability to obtain responses to prior communications submitted through the PSOB portal.

47. Plaintiff specifically asked why his submitted messages had not been opened or addressed.

48. The Senior Medical Review Specialist responded, in sum and substance, that this was not the subject of the current discussion and declined to address Plaintiff's concerns.

49. Plaintiff again attempted to obtain clarification regarding the lack of response, but the Senior Medical Review Specialist did not provide any explanation.

50. During the conversation, Plaintiff's spouse joined and spoke directly with the Senior Medical Review Specialist.

51. Plaintiff's spouse stated, in sum and substance, that Plaintiff suffers from post-traumatic stress disorder and was experiencing significant distress due to the lack of communication.

52. Plaintiff's spouse asked for clarification as to Plaintiff's claim status.

53. The Senior Medical Review Specialist stated, in sum and substance, that Plaintiff's claim was in legal review and being handled on an expedited basis.

54. Plaintiff's spouse further asked whether this stage represented the final phase before a decision.

55. The Senior Medical Review Specialist responded, in sum and substance, that this was the final stage prior to a determination being issued.

56. Despite these repeated confirmations, the Senior Medical Review Specialist did not provide any explanation for the lack of communication or failure to open Plaintiff's portal messages.

**F. Late June 2025 Communication Regarding Claim Handling**

57. On or about late June 2025, Plaintiff communicated with a Senior Medical Review Specialist regarding the status of his claim.

58. During that communication, the Senior Medical Review Specialist stated, in sum and substance, that Plaintiff's claim was being handled like any other claim and that there was no special or privileged treatment associated with Plaintiff's claim.

59. Based on this representation, Plaintiff understood that his claim was proceeding in the ordinary course without expedited consideration.

60. This representation stands in contrast to subsequent statements made by Defendants that Plaintiff's claim qualified for expedited processing and had advanced to legal review.

## G. Breakdown in Communication and Blackout Period

61. On or about July 25, 2025, or shortly thereafter, Plaintiff began experiencing a complete breakdown in his ability to meaningfully access and utilize the PSOB portal.

62. Plaintiff continued to submit messages through the portal; however, those messages were not opened or addressed.

63. As a result, Plaintiff was effectively deprived of any meaningful ability to communicate through the system.

64. This lack of engagement created the impression that Plaintiff was not being afforded a fair opportunity to participate in the administrative process governing his claim.

65. In response, Plaintiff attempted to contact Defendants through all available alternative means.

66. Plaintiff attempted to contact customer service, the Senior Medical Review Specialist, and the Director of the Public Safety Officers' Benefits Program using the telephone numbers and electronic mail addresses previously provided.

67. Plaintiff's telephone calls were not answered and, in sum and substance, were directed to voicemail without any live response.

68. Plaintiff left multiple voicemail messages requesting status updates and clarification regarding his claim.

69. Plaintiff also sent electronic mail communications seeking assistance and information regarding the status of his claim.

70. These efforts did not result in any meaningful response or follow-up from Defendants.

71. From on or about late July 2025 through and including December 10, 2025, Plaintiff did not receive any live communication or substantive engagement from Defendants through any channel.

72. While Defendants may characterize these failures as technical or information technology

issues affecting the portal, the portal was not the only method of communication available.

73. Customer service, the assigned medical review personnel, and the Program Director each constituted independent points of contact.

74. Each of these avenues proved ineffective, as Plaintiff was unable to obtain any meaningful response through any available channel.

75. As a result, Plaintiff was left without access to information, without the ability to communicate effectively, and without any indication that his claim was progressing toward adjudication.

## H. Plaintiff's Efforts to Maintain Communication

76. In an effort to ensure that his communications were documented, Plaintiff began using the subject lines of his portal messages to convey the substance of his requests.

77. Plaintiff adopted this method because his submitted messages were not being opened or reviewed.

78. Through this approach, Plaintiff attempted to preserve a record of his ongoing requests for status updates and clarification.

79. Despite these efforts, Defendants did not provide substantive responses to Plaintiff's communications.

## I. August 22, 2025 Communication and Request for Accommodation

80. On or about August 22, 2025, Plaintiff was contacted by a representative of the Office of Justice Programs in a human resources or liaison capacity regarding Plaintiff's concerns related to communication and access.

81. During that communication, Plaintiff explained, in sum and substance, that the issues he was experiencing were not limited to the PSOB portal, but reflected a broader and complete breakdown in communication across all available channels.

82. Plaintiff informed the representative that he had been unable to obtain responses from

8 - 17

customer service, the assigned medical review personnel, or the Program Director.

83. Plaintiff further explained that this lack of communication was causing significant difficulty in his ability to participate in the administrative process governing his claim.

84. Plaintiff stated, in sum and substance, that due to his existing condition of post-traumatic stress disorder, the communication breakdown was having a substantial impact on his ability to effectively engage with the process.

85. Plaintiff requested, in sum and substance, the assignment of a third-party liaison or point of contact who could assist in facilitating communication and ensuring that he would be able to meaningfully participate in the adjudication of his claim.

86. Plaintiff specifically requested the name, telephone number, and electronic mail address of an individual who could act in such a capacity.

87. Plaintiff did not receive a meaningful follow-up or response to this request.

88. Plaintiff attempted to contact the representative following this communication, but those efforts did not result in any substantive response.

**J. August 22, 2025 Deficiency Communication**

89. On or about August 22, 2025, Defendants generated or issued a written communication indicating, in sum and substance, that Plaintiff did not qualify for expedited processing due to an alleged deficiency in documentation.

90. Upon information and belief, this communication referenced an alleged failure by the New York City Police Department to provide required employment verification or documentation relating to expedited processing.

91. Plaintiff did not receive this communication at or near the time it was issued.

92. This communication stands in direct contrast to prior and subsequent representations made by Defendants that Plaintiff's claim qualified for expedited processing and had advanced to legal review.

93. The existence of this communication, coupled with the failure to provide it to Plaintiff at the time it was issued, created a material inconsistency in the record regarding the status of Plaintiff's claim.

94. Plaintiff was not provided with an opportunity to address or cure any alleged deficiency at or near the time this communication was generated.

## K. Exhaustive Efforts to Obtain Relief

95. In response to the ongoing lack of communication and unresolved status of his claim, Plaintiff undertook multiple efforts to obtain assistance and resolution through available oversight and administrative channels.

96. Plaintiff filed a complaint with the Office of Inspector General regarding issues relating to portal access, communication failures, and the handling of his claim.

97. Plaintiff also submitted a complaint to the Department of Justice Civil Rights Division regarding the lack of communication and his request for accommodation.

98. Plaintiff further contacted his congressional representative and requested assistance in obtaining information regarding the status of his claim.

99. On multiple occasions, Plaintiff's congressional representative submitted formal inquiries to Defendants requesting a status update and clarification regarding Plaintiff's claim.

100. Upon information and belief, Defendants referenced the August 22, 2025 deficiency communication in response to at least one of these inquiries.

101. Plaintiff's congressional representative requested a copy of that communication, stating, in sum and substance, that Plaintiff had not received it.

102. Despite multiple requests, that communication was not provided to Plaintiff or to the congressional office at or near the time of those inquiries.

103. These efforts did not result in a final determination or a clear and consistent explanation regarding the status of Plaintiff's claim

## L. December 1, 2025 Civil Rights Division Communication

104. On or about December 1, 2025, Plaintiff received a written communication from the Department of Justice Civil Rights Division regarding his prior complaint.

105. That communication indicated, in sum and substance, that the Civil Rights Division would not pursue further investigation or enforcement action based on Plaintiff's allegations. 106. The communication further stated, in substance, that Plaintiff retained the right to pursue civil remedies independently

107. The communication did not make any finding that Defendants' conduct was proper, nor did it exonerate Defendants with respect to the communication breakdown or Plaintiff's request for accommodation.

## M. December 10, 2025 Restoration of Portal Access

108. On or about December 10, 2025, Plaintiff's ability to access and utilize the PSOB portal was restored.

109. Following restoration, Plaintiff observed that a substantial number of previously submitted messages - estimated to be between approximately sixty and one hundred communications - were marked as opened.

110. These messages had been submitted over the course of several months during the period in which Plaintiff received no responses.

111. Despite being marked as opened, these communications were not substantively addressed.

112. Plaintiff did not receive meaningful responses to the content of those communications.

113. The manner in which these messages were processed created the appearance that they were opened in bulk without individualized review.

114. At the time of restoration, the original submission dates of these messages remained visible, reflecting that they had been submitted over an extended period during which they were not addressed.

115. At a later point, on or about February 2026, Plaintiff observed that the portal reflected those same messages as having been opened on December 10, 2025, without clear indication of the extended period during which they had remained unaddressed.

116. This change contributed to Plaintiff's concern that the system did not accurately reflect the sequence of events relating to his communications.

## N. Claim Status Rollback and Subsequent Change

117. Upon restoration of portal access on or about December 10, 2025, Plaintiff observed that the status of his claim was listed as "application review."

118. This status was inconsistent with prior representations that Plaintiff's claim had advanced to legal review and was being processed on an expedited basis.

119. Plaintiff submitted a message through the portal raising concerns regarding this discrepancy.

120. Plaintiff stated, in sum and substance, that if the issue had been a systemic or technical problem, the status of his claim should have remained consistent with its prior position in legal review.

121. After a period of time, Plaintiff observed that the status of his claim was changed back to legal review.

122. The sequence of these changes raised concerns for Plaintiff as to whether the status updates were the result of manual intervention rather than a consistent system-wide process.

## O. December 10, 2025 Communication with Senior Medical Review Specialist

123. On or about December 10, 2025, Plaintiff communicated with a Senior Medical Review Specialist regarding the status of his claim.

12 - 17

124. During that communication, Plaintiff asked, in sum and substance, for confirmation of his current claim status.

125. The Senior Medical Review Specialist responded, in sum and substance, that Plaintiff's claim was in expedited legal review

126. The Senior Medical Review Specialist further stated, in substance, that both she and the Director had communicated this status to Plaintiff on multiple prior occasions

127. Plaintiff raised the existence of the August 22, 2025 communication indicating that he did not qualify for expedited processing.

128. The Senior Medical Review Specialist declined to acknowledge or address that communication and did not provide an explanation reconciling it with prior and current representations.

129. This created a direct and unresolved inconsistency between Defendants' internal documentation and their repeated representations to Plaintiff.

130. Based upon these representations, Plaintiff understood that his claim had remained in expedited legal review from on or about July 28, 2025 through and including December 2025.

131. Despite this purported expedited status, Plaintiff did not receive a final determination.

## P. Differential Processing of Communications

132. Plaintiff observed that certain communications, including a message submitted in or about late July 2025 requesting accommodation, were not processed in the same manner as other messages submitted during the same period.

133. While numerous communications were marked as opened on or about December 10, 2025, this particular communication was not reflected as having been opened at that time.

134. This apparent difference in processing, when considered alongside the broader pattern of bulk message handling without substantive response, raised concerns regarding the

13 - 17

consistency of Defendants' handling of Plaintiff's communications

135. Plaintiff does not assert a definitive conclusion as to the cause of this discrepancy, but notes that the differences in processing further support the absence of a coherent and reasonable process.

## V. CLAIM FOR RELIEF

**(Administrative Procedure Act - Unreasonable Delay)**

136. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

137. This action arises under the Administrative Procedure Act, 5 U.S.C. § 706(1), which authorizes this Court to compel agency action unlawfully withheld or unreasonably delayed. 138. The Administrative Procedure Act waives sovereign immunity for this action and provides the appropriate mechanism to compel Defendants to act.

139. Plaintiff has suffered injury in fact as a result of Defendants' failure to issue a final determination on his claim, including ongoing uncertainty and inability to resolve his entitlement to benefits, which is redressable by the relief sought.

140. The agency action at issue is reviewable under the Administrative Procedure Act, and no adequate alternative remedy exists.

141. The discrete agency action unlawfully withheld or unreasonably delayed is Defendants' failure to issue a final determination on Plaintiff's claim.

142. Defendants have a nondiscretionary duty to process and adjudicate properly submitted claims under the Public Safety Officers' Benefits Program within a reasonable period of time once required documentation has been received.

143. Courts evaluate claims of unreasonable delay under the factors set forth in Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC").

14 - 17

144. Under the TRAC factors, Defendants' delay in adjudicating Plaintiff's claim is unreasonable.

145. Defendants have not followed a consistent or rational rule of decision-making, as demonstrated by conflicting representations regarding Plaintiff's claim status, including repeated statements that the claim was in expedited legal review while maintaining or generating documentation suggesting otherwise.

146. Upon information and belief, Defendants maintain internal practices, expectations, or guidelines regarding the expedited handling of certain categories of claims, including those arising from September 11-related service.

147. Plaintiff's claim was repeatedly represented as being in expedited legal review; however, the prolonged delay in adjudication is inconsistent with any reasonable understanding of an expedited process.

148. This inconsistency further demonstrates the absence of a coherent rule of reason governing Defendants' handling of Plaintiff's claim.

149. Plaintiff further notes that congressional oversight bodies, including Senate committees with jurisdiction over the Department of Justice, have held hearings and issued reports examining concerns related to delays and communication issues in federal benefits programs.

150. Plaintiff references this oversight context not to assert a specific finding in this case, but to illustrate that the type of communication breakdown and delay experienced here is consistent with issues that have been the subject of public oversight.

151. This context further underscores Plaintiff's contention that Defendants' handling of his claim lacked a consistent and reasonable process.

152. The delay is particularly unreasonable in light of Defendants' repeated representations that Plaintiff's claim had reached the final stage prior to adjudication.

153. Nothing in the record suggests that the nature or complexity of Plaintiff's claim justifies the extended delay reflected here.

154. Defendants have not provided a reasonable or consistent explanation for the delay reflected in the record.

155. Plaintiff has been prejudiced by this delay, including the inability to obtain a final determination and the prolonged uncertainty regarding his entitlement to benefits.

156. Plaintiff has exhausted all reasonably available avenues to obtain relief through administrative and oversight channels, including communications with Defendants, complaints to the Office of Inspector General and the Department of Justice Civil Rights Division, and congressional inquiries.

157. Despite these efforts, Defendants have failed to provide a final determination or a clear and consistent explanation of the status of Plaintiff's claim.

158. Plaintiff references issues relating to communication barriers and requests for accommodation solely to provide factual context for the delay and breakdown in the administrative process.

159. Plaintiff does not assert a claim for relief under the Rehabilitation Act, the Americans with Disabilities Act, or any other statutory or constitutional provision in this action, and expressly reserves the right to pursue such claims, if any, in a separate proceeding.

160. Plaintiff seeks equitable relief only and does not seek monetary damages in this action. 161. Plaintiff does not seek a determination from this Court regarding the merits of his claim or an award of benefits.

162. Rather, Plaintiff seeks only to compel Defendants to perform their nondiscretionary duty to issue a final determination within a reasonable and definite period of time.

163. Under the TRAC factors, Defendants have failed to act within a reasonable time.

164. This action seeks only to compel a decision, not to dictate its outcome.

165. Submitted contemporaneously with this Complaint as Exhibit A is a spreadsheet prepared by Plaintiff summarizing the relevant timeline of events, including the dates, times, and general nature of communications between Plaintiff and Defendants.

166. Plaintiff is prepared to produce additional evidentiary materials supporting the allegations set forth herein, including, but not limited to, voicemail recordings, electronic mail communications, PSOB portal messages, portal screenshots, and sworn affidavits attesting to relevant communications and events.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare that Defendants have unlawfully withheld or unreasonably delayed agency action; b. Order Defendants to adjudicate Plaintiff's claim within a definite and reasonable period of

time, such as within 30 to 60 days;

c. Grant such other and further relief as the Court deems just and proper.

Plaintiff seeks only an order compelling Defendants to render a decision, not a determination of entitlement or an award of benefits.

Plaintiff does not demand a trial by jury.

## VERIFICATION

Plaintiff declares under penalty of perjury that the foregoing is true and correct to the best of his knowledge.

Executed on: _____ 5 - 18 - 26 _____

Respectfully submitted,

s/

DARREN BUNEO

PRO SE LITIGANT

1125 Winding Pine Circle, Unit 103

Cape Coral, Florida 33909

Email: sijudojo@aol.com Phone: 732-580-7945

Date: _____ 5 - 18 - 26 _____

17 - 17